T.C. Memo. 2008-235

UNITED STATES TAX COURT

EDWARD NORMAN FADELEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15933-05.               Filed October 22, 2008.

Edward Norman Fadeley, pro se.

<u>Aimee R. Lobo-Berg</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined deficiencies and
additions to tax with respect to petitioner's Federal income
taxes as follows:

|      | Deficiency | Additions to Tax | | |
|------|-----------|-------------------|-------------------|--------------|
|      |           | Sec. 6651(a)(1)   | Sec. 6651(a)(2)   | Sec. 6654    |
| 2000 | $33,852   | $5,658            | $6,035            | $1,290       |
| 2002 | 34,798    | 6,038             | 3,220             | 868          |

At issue is petitioner's claim to additional deductions for business and personal expenses beyond those allowed by respondent.

All section references are to the Internal Revenue Code applicable to the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Since 1957, petitioner has been a licensed attorney in Oregon.  From approximately 1964 to 1989 petitioner was an elected member of the Oregon State Legislature.  In 1989 petitioner was elected as a justice on the Oregon Supreme Court.

In the mid-to-late 1990s, disciplinary questions were raised as to petitioner's ability to continue performing judicial duties.  In 1998, when petitioner was 68 years of age the disciplinary matter was settled.  Under the settlement, petitioner agreed to retire as a justice of the Oregon Supreme Court but to retain his right to a judicial retirement pension.

In 2000 and in 2002 petitioner received total pension income of $81,981 and $85,302, respectively, from petitioner's

judicial retirement and from a pension relating to his 25 years in the Oregon Legislature.

In 2001 petitioner sold a parcel of real estate in Salem, Oregon, and petitioner used proceeds from the sale to pay to an Oregon law firm $100,000 in legal fees relating to the above disciplinary matter.

Since his retirement in 1998, petitioner has performed a limited amount of legal work for a few clients out of his home.

Petitioner and his wife's home is located on an 80-acre farm in the Willamette Valley in Oregon. On their farm petitioner and his wife have a barn and raise a number of animals.

Typically, petitioner and his wife work on the farm a total of 10 to 20 hours a week. Meat harvested from animals raised on the farm is kept on the farm and is eaten by petitioner and his wife and their guests. None of the meat is sold.

Petitioner and his wife maintain no separate books and records relating to their farm activity. Bills, receipts, and payments relating to the farm are intermingled with petitioner and his wife's personal expenses.

For the 5 years for which evidence was offered, petitioner and his wife realized no profit from their farming activity, and the evidence does not establish what gross income, if any, was realized.

During 2000 and 2002 petitioner's wife worked part time as an employee of Landmark Education Corporation (LEC) and

she was not otherwise engaged in a trade or business.  As part of her employment with LEC, petitioner's wife could have requested and received reimbursement from LEC for all employee-related expenses she incurred.

In 2000 and 2002 petitioner and his wife received the following types and amounts of income and retirement benefits:

| Year | Type | Amount |
|------|------|--------|
| 2000 | Pension | $81,981 |
|      | Social Security | 18,102 |
|      | Other income | 2,750 |
|      | Interest Income | 106 |
| 2002 | Pension | $85,302 |
|      | Social Security | 19,248 |
|      | Other income | 2,750 |
|      | Interest Income | 76 |

In 2000 and 2002 Federal income taxes of $8,706 and $7,963, respectively, were withheld from petitioner's  pension income.

As of the spring of 2005, petitioner and his wife had not filed their 2000 and 2002 Federal income tax returns.  On audit, respondent prepared substitute 2000 and 2002 Federal income tax returns for petitioner, and respondent determined the above deficiencies in petitioner's Federal income taxes.  On May 27, 2005, respondent mailed to petitioner notices of the above deficiencies and additions to tax.

In 2006, after petitioner filed the petition and after respondent filed a motion to dismiss for lack of prosecution, the

Court continued this case and asked petitioner to file his 2000 and 2002 joint Federal income tax returns.

On July 25, 2006, petitioner and his wife late filed with respondent their 2000 and 2002 joint Federal income tax returns. Petitioner himself prepared the returns. Thereon, petitioner reported the pension income received in each year, and petitioner and his wife each attached a Schedule C, Profit or Loss From Business, and a Schedule F, Profit or Loss From Farming, on each of which a loss was reported. Petitioner's Schedules C related to petitioner's part-time law practice. Petitioner's wife's Schedules C related to her employment with LEC. The Schedules F related to petitioner and his wife's farming activity.

Also attached to petitioner and his wife's 2000 and 2002 late-filed joint Federal income tax returns was a Form 8829, Expenses for Business Use of Your Home, on which petitioner and his wife claimed that 70 percent of their home was used for petitioner's legal work and 50 percent of their home expenses were deductible expenses of a home office.

On Schedules A, Itemized Deductions, the following miscellaneous deductions were claimed: (1) $11,400 on the 2000 return as a loss carryback; and (2) $11,000 on the 2002 return as a loss carryforward relating to the $100,000 in legal fees petitioner paid in 2001 in connection with the settlement of the dispute over petitioner's status as a justice on the Oregon Supreme Court.

On their late-filed 2000 and 2002 Federal income tax returns, petitioner and his wife claimed credits for the approximately $8,000 that had been withheld during each year as Federal income taxes from petitioner's pensions, no taxes due, and overpayments of Federal income taxes.

Before trial in September of 2007, respondent reviewed petitioner and his wife's late-filed 2000 and 2002 Federal income tax returns and allowed some of the items and disallowed others. Specifically, respondent disallowed many of the claimed Schedule A itemized deductions and Schedule C business expenses, all of the home office and farm expenses claimed, and all of petitioner's wife's claimed business expenses. Respondent disallowed most of the claimed expenses due to inadequate substantiation and due to respondent's determination that petitioner's wife's claimed business and farm expenses did not qualify as ordinary and necessary expenses of a trade or business. At trial, the unagreed items claimed on petitioner's late-filed 2000 and 2002 Federal income tax returns were tried by consent. Rule 41(b)(1).

After trial, respondent acknowledged that 13.25 percent of petitioner's home qualifies as a home office and that expenses properly allocated thereto are deductible under section 179.

Respondent disallowed the $11,400 and the $11,000 in claimed carryback and carryforward losses relating to the legal fees petitioner incurred in 2001.

The schedule below reflects by category for each year the total amounts of petitioner's claimed expenses, the amounts respondent allowed, and the amounts still in dispute:

2000

| Expense Category | Amount Claimed | Amount Allowed by respondent | Still in dispute |
|---|---|---|---|
| Business | $33,546 | $16,968 | $ 6,272 |
| Home Office | 11,630 | 5,358 | 6,272 |
| Itemized | 52,042 | 40,594 | 11,400 |
| Farm | 8,902 | -0- | 8,902 |

2002

| Expense Category | Amount Claimed | Amount Allowed by respondent | Still in dispute |
|---|---|---|---|
| Business | $46,193 | $19,519 | $25,674 |
| Home Office | 16,709 | 5,372 | 11,337 |
| Itemized | 50,112 | 39,112 | 11,000 |
| Farm | 10,333 | -0- | 10,333 |

OPINION

Generally, as to the allowance of deductions taxpayers bear the burden of proof, and the Commissioner's determinations are entitled to a presumption of correctness. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Durando v. United States, 70 F.3d 548, 550 (9th Cir. 1995).

Petitioner and his wife late filed their Federal income tax returns. During respondent's audit and during pretrial, petitioner did not cooperate with respondent's representatives, and petitioner did not participate in good faith in the Court's

pretrial stipulation process.  Further, with regard to the expenses still in dispute, petitioner has not submitted credible evidence.

The burden of proof on the disputed expenses (and on the additions to tax) is on petitioner.  Sec. 7491(a); Rule 142(a).

The $6,272 and the $25,674 in business expenses for 2000 and 2002 still in dispute have not been adequately substantiated by petitioner, and petitioner has not established that the disputed expenses constitute ordinary and necessary business expenses deductible under section 162.

On brief, petitioner states that "Taxpayer spent all the money claimed in the amount of every deduction for the purpose that was claimed."  Petitioner's records in evidence and the credible trial testimony, however, do not adequately establish the nature and/or purpose of the items in dispute--particularly whether the items were incurred in connection with a trade or business.

Section 262 denies a deduction for personal, living, or family expenses.  Section 274(d) requires taxpayers to maintain substantiating evidence with regard to travel, meal, and entertainment expenses.  Beale v. Commissioner, T.C. Memo. 2000-158.

Petitioner has failed to substantiate that any of the claimed expenses still in dispute qualify as deductible business expenses.

Also the law is clear that expenses for which petitioner's wife could have received reimbursement from an employer are not deductible. Lucas v. Commissioner, 79 T.C. 1 (1982).

With respect to the claimed home office expenses in dispute, section 280A generally prohibits deductions relating to a taxpayer's personal residence. Section 280A(c)(1) provides an exception and allows a deduction for appropriate home office expenses where a taxpayer establishes that a portion of the taxpayer's home is used exclusively on a regular basis as: (1) The taxpayer's principal place of business or (2) a place of business which is used by the taxpayer in meeting with clients in the normal course of business. The deduction cannot exceed the gross income derived from the business use of the residence over the sum of certain deductions allocable to such income. Sec. 280A(c)(5); Tobin v. Commissioner, T.C. Memo. 1999-328; Cunningham v. Commissioner, T.C. Memo. 1996-141, affd. without published opinion 110 F.3d 59 (4th Cir. 1997).

In order for a taxpayer to establish use of a personal residence on a "regular" basis, the business use must be more than occasional and incidental. Irwin v. Commissioner, T.C. Memo. 1996-490, affd. without published opinion 131 F.3d 146 (9th Cir. 1997); Hefti v. Commissioner, T.C. Memo. 1993-128. The use of a portion of a residence both for personal purposes and for the carrying on of a trade or business does not meet the exclusive use

test.  See <u>Sengpiehl v. Commissioner</u>, T.C. Memo. 1998-23; <u>Hefti v.</u>
<u>Commissioner</u>, <u>supra</u>.

The trial evidence is particularly vague as to petitioner's
use of his home in his part-time legal work.[1]  Respondent is
generous in agreeing to treat 13.25 percent of petitioner's home
as a home office.  On the facts before us we have no basis for
using a higher percentage, and we disallow any claimed home office
expenses in excess of the amount reflected by this percentage.

With regard to the miscellaneous itemized deductions claimed
on petitioner's 2000 and 2002 tax returns that are still in
dispute ($11,400 for 2000 and $11,000 for 2002), at trial
petitioner testified that the $11,400 claimed for 2000 actually
was incurred in 2001 and represented a claimed loss carryback to
2000.  The $11,000 claimed for 2002 also was acknowledged to have
been incurred in 2001 and represents a claimed loss carryforward
to 2002.  There is only a limited legal basis for loss carryovers
of miscellaneous itemized deductions, and petitioner's entitlement
thereto in this case has not been established.  See sec.
172(d)(4).

The claimed Schedule F farm expenses still in dispute involve
$8,902 for 2000 and $10,333 for 2002.  No income was earned from
petitioner and his wife's farm activity, and the facts before us

---

[1] Petitioner stated that he "lives in his workspace."

do not establish that the farm activity constituted a trade or business activity.

Petitioner alleges that a number of misfortunes on the farm hampered efforts to earn a profit. Petitioner claims that one of the horses fell into a ditch and died and that cougars and an English bulldog killed some of the sheep and three pygmy angora goats. Petitioner notes that Douglas fir trees grow on the property, and petitioner argues that the long growing cycle for Douglas fir and the resulting delayed tree harvest, explain the lack of farming profits, not a lack of profit motive. On the evidence before us, we reject petitioner's claimed additional farm expenses.

Although not clear from the parties' briefs, claimed medical expenses of $7,203 and a claimed horse casualty expense of $1,800 may also be in dispute. Neither item is supported by credible evidence, and they are disallowed.

On the disputed additions to tax, the evidence satisfies respondent's burden of production.

For the reasons stated, we sustain respondent's disallowance of each of the claimed expenses still in dispute, and we sustain the imposition against petitioner of each of the additions to tax.

<u>Decision will be entered</u>

<u>under Rule 155</u>.